UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT H. WARNER, II,

    Plaintiff,

v.

DSM PHARMA CHEMICALS
NORTH AMERICA, INC.,

    Defendant.
_____/

Case No. 1:07-cv-302

HON. JANET T. NEFF

JEFF GRANT, et al.,

    Plaintiffs,

v.

DSM PHARMA CHEMICALS
NORTH AMERICA, INC.,

    Defendant.
_____/

Case No. 1:07-cv-312

**OPINION**

In these consolidated cases, plaintiffs, former employees of defendant, seek recovery for defendant's alleged breach of an agreement to pay a retention bonus for continued employment in the face of an impending shutdown of defendant's South Haven facility. Pending before the Court is plaintiffs' motion for summary judgment. Having fully considered the motion, for the reasons that

follow, the Court denies plaintiffs' Motion for Summary Judgment. This motion is being decided without oral argument.[1]

I. Factual Summary

Plaintiffs are eight former employees of defendant; all were employed at defendant's South Haven, Michigan facility (SMF[2] ¶ 1). On December 20, 2005, defendant announced that it intended to close its South Haven facility (*id.* ¶ 2). Defendant created a Severance Plan and Retention Bonus agreement in light of the impending shutdown (*id.* ¶¶ 3-8). Each of the plaintiffs was offered the Retention Bonus agreement in the form of an individualized letter, and each signed the agreement (*id.* ¶¶ 8-9). In key part, the Retention Letter stated that the employee "will receive a retention bonus in an amount, that when combined with the DPC[3] Severance benefits, will equal one (1) year base salary, provided that you are still employed by the Company in your DPC assignment until your employment is terminated on a date chosen by the Company as a result of the shutdown of the Company's South Haven facility (Def. Resp. Ex. B; Pls. Br., Annett Dep. Ex. 11).

Ultimately, the South Haven plant was never shut down. Instead, on September 30, 2006, Albemarle Corporation acquired the facility and continued operations; all eight plaintiffs were hired by Albemarle (SMF ¶¶ 19-20, 22). Plaintiffs each only received a prorated payment of their respective retention bonuses *(id.* ¶ 24).

---

[1]Having reviewed the parties' written submissions and accompanying exhibits, the Court finds oral argument unnecessary. *See* W.D. Mich. LCivR 7.2(d).

[2] Statement of Material Facts (Dkt 118-2, Case No. 1:07-cv-302) and Defendant's Responses and Counter-Statement of Material Facts (Dkt 120-2, Case No. 1:07-cv-302).

[3] DSM Pharma Chemicals

2

## II. Legal Standard

A motion for summary judgment is properly granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008); *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005).

The party moving for summary judgment has the initial burden of showing that no issue of genuine material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of a genuine issue for trial. *Slusher,* 540 F.3d at 453.

However, where the party moving for summary judgment has the burden of proof at trial—the plaintiff on a claim for relief or the defendant on an affirmative defense—the movant faces a substantially higher hurdle. *Arnett v. Myers,* 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.,* 270 F.3d 1036, 1056 (6th Cir. 2001). As explained in *Arnett*:

> "To defeat [a] plaintiff's claim on a motion for summary judgment, however, a substantially higher hurdle must be surpassed, particularly where, as is the case here, the moving party bears the ultimate burden of persuasion on this issue at trial." [*Cockrel v. Shelby County Sch. Dist.,* 270 F.3d 1036, 1056 (6th Cir. 2001)] (citing 11 JAMES WILLIAM MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)) (if the moving party also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.").

*Arnett,* 281 F.3d at 561. Thus, "'[s]ummary judgment in favor of the party with the burden of persuasion ... is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact.'" *Id.* (quoting *Hunt v. Cromartie,* 526 U.S. 541, 553 (1999)).

### III. Analysis

Plaintiff moves for summary judgment on the grounds that, first, there is no issue of material fact and plaintiffs are entitled to judgment as a matter of law with respect to plaintiffs' entitlement to full retention bonuses under the Retention Letters; second, if plaintiffs are found to be entitled to such judgment, there is no genuine issue as to the amount of damages; and third, there is no genuine issue requiring trial on the issue of defendant's affirmative defense of "accord and satisfaction."

### A. Retention Bonus Agreement

Plaintiff argues that there is no genuine issue of material fact regarding plaintiffs' entitlement to a retention bonus equal to one year's pay as a result of defendant closing of its South Haven facility on September 30, 2006. The key question is whether the language of the Retention Bonus Letter[4] unambiguously entitled plaintiffs to retention bonuses under the circumstances of defendant's cessation of business at its South Haven facility. Plaintiffs assert that there is no ambiguity in the Retention Letter (contract) language, and to the extent it is ambiguous, under Michigan law, any ambiguity must be strictly construed against the drafter, defendant. Accordingly, plaintiffs contend they are entitled to judgment as a matter of law.

The goal of contract interpretation is to determine the intent of the contracting parties. *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.,* 666 N.W.2d 251, 259 (Mich. 2003); *see*

---

[4]The individual Letters did not vary in their substantive provisions concerning the retention bonus.

*also Tenneco Inc. v. Amerisure Mut. Ins. Co.,* 761 N.W.2d 846, 857 (Mich. Ct. App. 2008). If the language of a contract is unambiguous, it must be construed and enforced as written. *Quality Prods.,* 666 N.W.2d at 259. "Thus, an unambiguous contractual provision is reflective of the parties' intent as a matter of law." *Id*.

However, if an ambiguity in a contract cannot be resolved, it is not for the court to resolve the ambiguity as a matter of law by applying the rule of contra proferentem. "It is well settled that the meaning of an ambiguous contract is a question of fact that must be decided by the jury." *Klapp v. United Ins. Group Agency, Inc.,* 663 N.W.2d 447, 454-55 (Mich. 2003).

> Where a written contract is ambiguous, a factual question is presented as to the meaning of its provisions, requiring a factual determination as to the intent of the parties in entering the contract. Thus, the fact finder must interpret the contract's terms, in light of the apparent purpose of the contract as a whole, the rules of contract construction, and extrinsic evidence of intent and meaning.

*Id.* (citing 11 Williston, Contracts (4th ed), § 30:7, pp 87-91).

In *Klapp*, the Michigan Supreme Court explained in detail the application of the rule of "contra proferentem":

> In interpreting a contract whose language is ambiguous, the jury should also consider that ambiguities are to be construed against the drafter of the contract. *Herweyer v Clark Hwy. Servs., Inc.,* 455 Mich. 14, 22; 564 N.W.2d 857 (1997). This is known as the rule of contra proferentem. However, this rule is only to be applied if all conventional means of contract interpretation, including the consideration of relevant extrinsic evidence, have left the jury unable to determine what the parties intended their contract to mean. Accordingly, if the extrinsic evidence indicates that the parties intended their contract to have a particular meaning, this is the meaning that should be given to the contract, regardless of whether this meaning is in accord with the drafter's or the nondrafter's view of the contract. In other words, if a contract is ambiguous regarding whether a term means "a" or "b," but relevant extrinsic evidence leads the jury to conclude that the parties intended the term to mean "b," then the term should be interpreted to mean "b," even though construing

5

the document in the nondrafter's favor pursuant to an application of the rule of contra proferentem would produce an interpretation of the term as "a."

However, if the language of a contract is ambiguous, and the jury remains unable to determine what the parties intended after considering all relevant extrinsic evidence, the jury should only then find in favor of the nondrafter of the contract pursuant to the rule of contra proferentem. In other words, the rule of contra proferentem should be viewed essentially as a "tie-breaker," to be utilized only after all conventional means of contract interpretation, including the consideration of relevant extrinsic evidence, have been applied and found wanting.

*Klapp,* 663 N.W.2d at 454-55 (footnotes omitted).

Contrary to plaintiffs' arguments, the Retention Bonus Letter is not unambiguous. The Letter states in key part:

> As consideration for your continuing efforts and loyalty, DSM Pharma Chemicals North America, Inc. (the "Company" or "DPC") has determined to provide you with a retention bonus in connection with a shutdown of the Company's South Haven facility, under the terms and conditions described below.
>
> Subject to the conditions set forth below, you will receive a retention bonus in an amount, that when combined with the DPC Severance benefits, will equal one (1) year base salary, provided that you are still employed by the Company in your DPC assignment until your employment is terminated on a date chosen by the Company as a result of the shutdown of the Company's South Haven facility.
>
> * * *
>
> We appreciate your contributions to the DPC business and hope that this incentive will encourage you to remain with us until its completion.

(Pls. Br., Annett Dep., Ex. 11.)

It is undisputed that although defendant intended to shut down its South Haven plant, ultimately, the plant was not shut down. Instead, on September 30, 2006, Albemarle Corporation acquired the facility and continued operations; all eight plaintiffs were hired by Albemarle (SMF ¶¶ 19-20, 22). The Retention Bonus letter does not unambiguously entitle plaintiffs to a retention

6

bonus under these circumstances because plaintiffs' employment was not clearly "terminated on a date chosen by the Company as a result of the shutdown of the Company's South Haven facility." Instead, plaintiffs' employment with defendant was terminated because the South Haven facility was sold to Albemarle.

As plaintiffs acknowledge, the Retention Bonus Letter language is unclear concerning whether (1) defendant's "completion of business" constitutes a "shutdown" for purposes of the retention bonus, (2) a shutdown of defendant's business is the equivalent of a shutdown of defendant's South Haven facility, and (3) plaintiffs' employment was "terminated." Contrary to plaintiffs' argument, these ambiguities are not properly resolved by the Court on summary judgment. "Where the contract language is unclear or susceptible to multiple meanings, interpretation becomes a question of fact." *Port Huron Educ. Assn MEA/NEA v. Port Huron Area Sch. Dist.,* 550 N.W.2d 228, 237 (Mich. 1996). The contract language at issue is susceptible to different meanings. While the factfinder may ultimately determine that plaintiffs are entitled to the full retention bonus, this question is not properly resolved as a matter of law in the circumstances presented.

Plaintiffs additionally argue that defendant cannot claim a "shutdown" of its South Haven facility was a condition precedent to accrual of each plaintiff's right to the full retention bonus where defendant caused the failure of the condition. Thus, plaintiffs assert that to the extent the actual shutdown of the plant was a condition precedent, defendant's sale of the facility to a third party acted as a waiver of that condition. Defendant does not claim that the shutdown was a condition precedent, and instead states that this issue is irrelevant. This issue need not be resolved by the Court in conjunction with plaintiffs' motion for summary judgment, but is instead a matter of contract interpretation.

7

Finally, plaintiffs argue that "the Retention Bonus Agreement was a unilateral contract, which plaintiffs accepted by performing the act upon which the promise was based: staying on in the management team at South Haven until 'completion of defendant' [sic] business'" (Pls. Br. 15). Plaintiffs' argument is based on the final sentence of the Retention Bonus Letter, which states:

> We appreciate your contributions to the DPC business and hope that this incentive will encourage you to remain with us until its completion.

Plaintiffs argue that because the Retention Bonus Agreement was a unilateral contract, they could accept the contract by (1) remaining with defendant until the originally-anticipated shutdown, or (2) until "the completion" of "DPC business" on September 30, 2006.

The Court is unpersuaded by plaintiffs' argument. It is not clear from the language of the contract that this sentence is an alternative to the specific provisions of the Retention Letter, noted above, setting forth the terms for receipt of the retention bonus. At best, the closing sentence of the Retention Bonus Letter creates an ambiguity, which is properly resolved by the factfinder, rather than the Court, as a matter of contract interpretation. Plaintiffs are not entitled to summary judgment on this ground.

### B. Damages

Plaintiffs argue that there is no genuine issue of material fact concerning the calculation of damages should defendant be found liable for payment of the retention bonus, and thus, plaintiffs are at least entitled to partial summary judgment on the issue of damages. Plaintiffs assert that because the Retention Bonus Letter stated that the bonus would be equal to "one (1) year base salary," each plaintiff's amount of damages can be easily calculated by subtracting the prorated amount already received from the promised "one (1) year base salary."

8

Defendant points out, however, that by the express terms of the Retention Bonus Letter, plaintiffs would receive a retention payment comprised of both severance pay and a retention bonus. Defendant provides a table prepared at the time the bonuses were offered, which reflects each plaintiff's annual compensation, apportioned between severance and retention (Annett Dep. 36 and Dep. Ex. 5). Defendant argues that because each plaintiff would have been entitled to a certain amount of severance pay, e.g., six months salary, and it is undisputed that plaintiffs ultimately were not entitled to severance pay, plaintiffs are not entitled to that portion of the promised payment. Thus, defendant concludes that even if it is liable to plaintiffs, defendant is only liable for the retention bonus portion of the one (1) year base salary, and is not liable for the severance pay portion. In light of the parties' positions and the evidence presented, the Court concludes that there is genuine issue of material fact concerning the amount of damages. Accordingly, plaintiff is not entitled to partial summary judgment on this issue.

### C. Accord and Satisfaction

Plaintiffs argue that the facts do not support a finding that there has been an accord and satisfaction between defendant and plaintiffs under MICH. COMP. LAWS § 440.3311. Plaintiffs therefore contend that they are entitled to partial summary judgment in their favor on this affirmative defense.[5]

Defendant responds that it has alleged sufficient facts to show that summary judgment is inappropriate as to its accord-and-satisfaction defense. Although this is a close call, the Court agrees

---

[5] There is no dispute that this defense does not apply to plaintiff Robert Warner since he never cashed the check he received from defendant.

that the material facts concerning accord and satisfaction are disputed, thereby precluding summary judgment.

It is undisputed that in the fall of 2006, plaintiffs each received a prorated check from defendant as a retention bonus. The checks were personally delivered to each plaintiff by Stephen Lijoi, defendant's former site director. The checks included no notation that they represented retention bonus funds, and they were not accompanied by any written document identifying the payments or explaining the proration. Lijoi did inform each plaintiff that the check provided was for the retention bonus.

Plaintiffs argue that defendant's accord-and-satisfaction defense fails as a matter of law because defendant cannot meet the statutory requirements for accord and satisfaction of a negotiable instrument under MICH. COMP. LAWS § 440.3311, Accord and Satisfaction by Use of an Instrument. The statute provides:

> (1) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.
>
> (2) Unless subsection (3) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.
>
> (3) Subject to subsection (4), a claim is not discharged under subsection (2) if either of the following applies:
>
>> (a) The claimant, if an organization, proves that (i) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place, and (ii) the instrument or accompanying communication was not received by that designated person, office, or place.

> (b) The claimant, whether or not an organization, proves that within 90 days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. This subdivision does not apply if the claimant is an organization that sent a statement complying with subdivision (a)(i).
>
> (4) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

MICH. COMP. LAWS § 440.3311.

The parties agree that in *Hoerstman Gen. Contracting, Inc. v. Hahn,* 711 N.W.2d 340 (Mich. 2006), the court set forth the governing principles for accord and satisfaction under § 440.3311:

> An accord and satisfaction is an affirmative defense grounded in contract principles. An accord is a contract and requires a meeting of the minds of those who enter into it. A satisfaction is the discharge of the debt occurring after acceptance of the accord.
>
> Cases in which an accord and satisfaction defense is relevant involve a good-faith dispute about an unliquidated amount owing under a contract. One party makes a tender in satisfaction of the claim (an accord). The other accepts or rejects the accord. If the second party accepts the tender, there is both an accord and a satisfaction.

*Id.* at 344 (citations and footnotes omitted).

There are three requirements for accord and satisfaction: (1) a good-faith tender to the claimant as full satisfaction of the claim, (2) the claim be unliquidated or subject to a bona fide dispute, and (3) the claimant must obtain payment of the instrument. *Hoerstman*, 711 N.W.2d at 347-48; (citing MICH. COMP. LAWS § 440.3311(1)). Here, the third requirement is not at issue; however, the parties dispute whether defendant's prorated payments constituted (1) a good-faith

tender to plaintiffs as full satisfaction of the claim, and whether the retention bonus was (2) unliquidated or subject to a bona fide dispute.

Although plaintiffs have made a persuasive argument that defendant is unable to establish elements (1) and (2), defendant nevertheless presents evidence that, considered in the light most favorable to defendant, raises genuine issues of material fact. *See Slusher,* 540 F.3d at 453. Defendant has presented evidence that it established a formula for prorating the retention payment due each plaintiff, based on working nine months of defendant's estimated sixteen month time frame for the plant shutdown (Lijoi Dep. 54-56, 59-61). Further, Lijoi informed each plaintiff that the check issued was a prorated retention payment. This evidence creates a factual dispute regarding whether defendant made a good-faith tender to the claimant as full satisfaction of the claim. Likewise, regarding element (2), that the claim be unliquidated or subject to a bona fide dispute, defendant has presented evidence that at the time the checks were issued, some plaintiffs questioned the prorated retention payment, indicating that they disputed whether the full retention should instead have been paid.

Moreover, once the three requirements set forth in *Hoerstman* are met, to discharge the bonus retention claim in this case, there must be a showing that plaintiffs knew that defendant tendered the instrument in full satisfaction of the claim. *See Hoerstman*, 711 N.W.2d at 348 (citing § 440.3311(4)).[6] Defendant cites deposition testimony that at least supports an inference that this additional showing is met. Lijoi informed each plaintiff that the check issued was a prorated retention. Some plaintiffs questioned the prorated payment, even though they did not express this

---

[6]Discharge under MICH. COMP. LAWS § 440.3311(2) is not at issue.

concern to defendant. Additionally, plaintiff Warner did not cash his check, presumably because he knew the check was offered in full satisfaction of the retention payment due.

In light of the evidence presented, the issue of accord and satisfaction is a matter for the factfinder. "The existence of an accord and satisfaction may be decided as a question of law if the facts of the case are undisputed and not open to opposing inferences." *Hoerstman*, 711 N.W.2d at 344. Here, this standard is not met. Accordingly, summary judgment must be denied on this issue.

## IV. Conclusion

For the reasons stated above, the Court concludes that plaintiff is not entitled to summary judgment on any of the grounds asserted. An Order consistent with this Opinion will be entered.


DATED: January 19, 2010   /s/ Janet T. Neff
                                                    JANET T. NEFF
                                                    United States District Judge